FILED

July 8, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:37 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

ROBERT POELLNITZ,
      Employee,

v.

RESOLUTE FOREST PRODUCTS,
      Employer,

And

TRAVELERS,
      Insurance Carrier.

Docket No.: 2016-01-0135

State File No.: 64362-2014

Judge: Audrey A. Headrick

---

## EXPEDITED HEARING ORDER
## (REVIEW OF THE FILE)

---

This claim came before the Court upon a Request for Expedited Hearing filed by the employee, Robert Poellnitz, pursuant to Tennessee Code Annotated section 50-6-239 (2015) for a determination of his entitlement to medical and temporary disability benefits as to his cervical condition. Mr. Poellnitz requested that the Court decide this matter upon a review of the file without an evidentiary hearing. Resolute, the employer, did not object to a review-of-the-file determination. The Court issued its docketing notice on June 8, 2016, and neither party responded.[1] The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Poellnitz is likely to prevail at a hearing on the merits regarding causation. This Court finds it needs no additional information to determine whether Mr. Poellnitz is likely to prevail at a hearing on the merits of the claim.[2] Based upon the record at this time, the Court finds Mr. Poellnitz is

---

[1] Although neither side responded to the Docketing Notice, counsel for Resolute provided a missing document that was not in the Court's electronic file due to a scanning error. (Ex. 16.) Counsel for Mr. Poellnitz did not object to its admission.

[2] Accordingly, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2015), Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2015), and Rule 7.02 of the Practices and Procedures of the Court of Workers' Compensation Claims (2015), the Court decides this matter upon a review of the written materials.

1

not likely to prevail at a Compensation Hearing and denies his request for temporary disability and medical benefits.[3]

## History of the Claim

Mr. Poellnitz is a fifty-two-year-old resident of Muscle Shoals, Colbert County, Alabama, who is employed by Resolute as a maintenance technician.[4] The parties stipulate that Mr. Poellnitz sustained a compensable left-knee injury on August 15, 2014, when he attempted to weld a piece of pipe, lost his balance, and fell. However, Resolute disputes the compensability of Mr. Poellnitz's cervical condition.

Resolute provided Mr. Poellnitz with a panel of physicians for his knee on the date of his injury. Later, Resolute provided him with a panel of orthopedic surgeons, and he selected Dr. Chad Smalley. (Ex. 6.) The records reflect Dr. Smalley was also treating Mr. Poellnitz contemporaneously for a left-shoulder condition unrelated to his work injury. *Id.*

On July 29, 2015, Dr. Smalley ordered a functional capacity evaluation (FCE) to determine permanent restrictions for Mr. Poellnitz's left-knee. *Id.* In a separate office note for his left-shoulder condition, Dr. Smalley noted Mr. Poellnitz reported "some neck pain and numbness/tingling into the hand" and indicated he would order an EMG if the symptom(s) continued. *Id.* Mr. Poellnitz underwent the FCE on August 25, 2015, with the evaluator concluding, "[n]o lifting or positional restrictions are recommended for working due to meeting the job demands." (Ex. 12.)

Mr. Poellnitz later saw Dr. Bruce Thompson, his chiropractor, on August 13, 2015. (Ex. 15.) He reported the following history to Dr. Thompson:

> [H]e was doing better until Wednesday, July 22, 2015,[5] when his left shoulder blade, neck, left hand and little finger and ring finger began hurting and became weak after performing FCE at work, also his right hip, left hip and [sic] became aggravated.

*Id.* Mr. Poellnitz rated his neck pain as eight out of ten. *Id.* Dr. Thompson's records reflect that Mr. Poellnitz routinely received chiropractic adjustments from April 4, 2005, forward for back and neck pain. *Id.* Prior to his August 13, 2015 visit with Dr. Thompson, Mr. Poellnitz typically rated his neck pain as three out of ten. *Id.*

---

[3] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[4] The Court notes that Employer's First Report of Work Injury or Illness and Notice of Denial identify "Bowater Newsprint" as the employer. (Ex. 1 and 2.) However, all other filings identify the employer as "Resolute Forest Products."

[5] The FCE was actually on August 25, 2015.

On August 25, 2015, Mr. Poellnitz underwent an FCE at ATI Physical Therapy. (Ex. 12.) There is no mention in the FCE report of Mr. Poellnitz reporting that he sustained an injury during the course of his examination.

Mr. Poellnitz saw Dr. Timothy Ashley, his primary care physician, on August 31, 2015, complaining of upper back pain that radiated to his left upper arm. (Ex. 14.) Dr. Ashley stated:

> This is a chronic, but intermittent problem with an acute exacerbation. [Mr. Poellnitz] states that the current episode of pain started 7 days ago. Associated symptoms include numbness in the left hand. ARM PAIN—0—STARTS IN BACK—DID FUNCTIONAL STUDY LAST WEEK 8/25/15—THEN 3 DAYS LATER NOTED NUMNBESS IN LEFT ARM—CHIROPRACTOR—ADJUSTD [sic] WITH NO RELIEF—NOT SLEEPING IN 3 DAYS.

*Id.* (Emphasis in original.) Dr. Ashley gave Mr. Poellnitz a trigger point injection and ordered a cervical MRI. *Id.*

Mr. Poellnitz next saw Dr. Smalley on September 9, 2015. (Ex. 10.) Dr. Smalley previously had separate office notes for Mr. Poellnitz's unrelated left-shoulder condition and his work-related left-knee injury. *Id.* However, Dr. Smalley consolidated both conditions in one office note for that visit. *Id.* Underneath the section regarding his left-shoulder condition, one of Dr. Smalley's diagnoses was cervicalgia. *Id.* Dr. Smalley referred Mr. Poellnitz for "follow up with a cervical spine specialist after the EMG for evaluation of his cervical spine." *Id.* The record reflects Dr. Smalley referred Mr. Poellnitz to see Dr. Jason Eck, who is in his practice. *Id.* Regarding the left-knee injury, Dr. Smalley placed Mr. Poellnitz at maximum medical improvement (MMI) and released him to return to work on September 28, 2015. *Id.*

Mr. Poellnitz did not see Dr. Eck.[6] Instead, he saw Dr. Scott Hodges, who is in Dr. Smalley's practice, on September 22, 2015, with complaints of neck and bilateral arm pain. *Id.* Dr. Hodges, an unauthorized physician, noted that Mr. Poellnitz gave the onset date as four weeks prior and reported, "all the left shoulder pain and weakness began while doing the Functional Capacity Evaluation for CL repair." *Id.* The quality of Mr. Poellnitz's cervical MRI was too poor for Dr. Hodges to use for diagnosis purposes. *Id.* However, he reviewed cervical x-rays and diagnosed Mr. Poellnitz with "acute nerve injury to two muscles of the C8 myotome, consistent with acute radiculopathy" and an incidental finding of moderate left carpal tunnel syndrome. *Id.* Dr. Hodges ordered a new cervical MRI, took Mr. Poellnitz off work for one week, and opined, "[t]his appears to be [a] workers' compensation related injury (lifting with FCE)." *Id.*

---

[6] The record is silent regarding why Mr. Poellnitz did not see Dr. Eck.

Following his second cervical MRI, Mr. Poellnitz returned to see Dr. Hodges on September 29, 2015. *Id.* After reviewing the MRI, Dr. Hodges diagnosed Mr. Poellnitz with cervical spinal stenosis and prolapsed cervical intervertebral disc. *Id.* He noted, "HNP/foraminal stenosis—severe C6-7/C7-T1 secondary to workers' compensation injury." *Id.* At that time, Dr. Hodges took Mr. Poellnitz off work through November 16, 2015, and ordered an anterior cervical discectomy and fusion, which he performed on October 14, 2015. (Ex. 11.) The record does not reflect whether Dr. Hodges sought authorization at any point from Resolute to treat Mr. Poellnitz's neck condition.

On December 7, 2015, Mr. Poellnitz selected Dr. Timothy Strait from a panel provided by Resolute to address medical causation of his cervical condition. (Ex. 7.) He saw Dr. Strait on January 4, 2016. (Ex. 13.) Dr. Strait noted Mr. Poellnitz was there for "neurosurgical consultation today primarily for an Independent Medical Evaluation." *Id.* Mr. Poellnitz gave a history of having a work-related left-knee injury that required surgery and subsequently undergoing an FCE. *Id.* He stated that, "in the process of performing [the FCE], [he] experienced pain radiating down his left arm in a radicular fashion." *Id.* Mr. Poellnitz told Dr. Strait, "[h]e had never experienced this type of pain before, although he did report neck pain in the past which frequently led to chiropractic visits." *Id.* After examining Mr. Poellnitz, Dr. Strait opined:

> [Mr. Poellnitz] clearly has a neurologic deficit within the distribution of the left C8 nerve root. I find it interesting that he underwent a two level decompression involving C6-7 and C7-T1 on the left for what is clearly a singular C8 left nerve root compression syndrome. Nevertheless, the onset of this nerve root compression syndrome originated from the events during the performance of the F.C.E. Therefore, this would come under the auspices of workers' compensation.

*Id.*

However, in correspondence dated January 19, 2016, from Dr. Strait to Michael Duggar at Travelers, he changed his previous medical opinion. (Ex. 16.) He stated:

> After reviewing the chronology of [Mr. Poellnitz'] symptoms, it is clear that his left arm pain did not result from an injury occurring during his performance of the F.C.E. Therefore, I will rescind my previous opinion since it was based entirely on the patient's input.

> In summary, the medical records clearly indicate that his left arm pain was not the result of him participating in the F.C.E., which occurred on August 25, 2015.

*Id.* Dr. Strait provided no further explanation regarding the information or records upon which he relied. Less than a week later, Resolute issued a Notice of Denial of Claim for

Compensation only as to the claimed cervical injury "per the opinion of the authorized treating physician." (Ex. 2.)

In the interim, Dr. Hodges continued seeing Mr. Poellnitz and kept him off work through February 18, 2016. At that visit, Dr. Hodges took him off work until his next follow-up visit. The record does not contain any of Dr. Hodges' office notes beyond February 18, 2016.

On March 21, 2016, Dr. Hodges testified by affidavit regarding the cause of Mr. Poellnitz's cervical condition. (Ex. 8.) He stated he had reviewed the FCE performed on August 25, 2015, the IME report of Dr. Strait, and the records of Dr. Smalley, Dr. Ashley, and Dr. Thompson. Dr. Hodges opined:

> [I]t is my opinion, within a reasonable degree of medical certainty, and considering all causes, that Mr. Poellnitz's cervical injuries, which he suffered while lifting weights at a functional capacity evaluation for his work-related left lower extremity injury, arose primarily out of and in the course and scope of his employment with Resolute Forest Products, and that the employment contributed to more than fifty percent (50%) in causing [Mr. Poellnitz's] cervical injuries and the need for surgery on October 14, 2015.

> [T]hat the cervical injuries and the aggravation of any pre-existing cervical conditions, which Mr. Poellnitz suffered while lifting at a work-related functional capacity evaluation on August 25, 2015, contributed to more than fifty percent (50%) in causing Mr. Poellnitz's disablement and the need for his surgery on October 14, 2015 at Memorial Hospital and the need for his follow up outpatient care in my offices, for the injuries, medical conditions and complications, as described in the Memorial records and in my office notes.

*Id.* Dr. Jolley also opined that Mr. Poellnitz is not at MMI and is temporarily totally disabled. *Id.*

Mr. Poellnitz asked the Court to order medical benefits and temporary disability benefits. He requested that Resolute pay for medical treatment he obtained from Dr. Hodges based upon Dr. Smalley's referral to a cervical spine specialist.[7] Mr. Poellnitz argued Resolute received notice of Dr. Smalley's referral because the records reflect it received copies of the records of both Dr. Smalley and Dr. Hodges. He also requested the Court order temporary total disability benefits at the agreed upon compensation rate of $932.80 from September 2015 forward.

---

[7] As previously indicated, the record reflects that Dr. Smalley actually referred Mr. Poellnitz to Dr. Eck in his practice although Mr. Poellnitz saw Dr. Jolley in his practice instead.

Resolute asked the Court to deny Mr. Poellnitz's request. It contended Resolute did not receive the notice required under Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) (2015) as to Dr. Smalley's referral of Mr. Poellnitz to Dr. Hodges. Instead, Resolute's alleged it did not receive notice of Mr. Poellnitz's alleged cervical injury until approximately a month after the alleged injury occurred and several weeks after Dr. Smalley's referral to Dr. Hodges. It argued Dr. Strait's opinion, as an authorized treating physician, has the presumption of correctness set forth in Tennessee Code Annotated section 50-6-102(14)(E) (2015) regarding causation. Resolute further argued that Dr. Hodges is not an authorized treating physician under Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) (2015).

Alternatively, if the Court does deem Dr. Hodges to be an authorized treating physician, Resolute argued the presumption of correctness is rebutted by a preponderance of the evidence based upon the medical records. It contended the FCE performed on August 26, 2015, did not substantiate Mr. Poellnitz's allegation that he injured his neck during the testing. Resolute also pointed out that Mr. Poellnitz complained to Dr. Smalley on July 29, 2015, of neck pain and numbness and tingling down into his hand, which was prior to the FCE. It further argued that Mr. Poellnitz complained to Dr. Thompson about neck and arm symptoms on August 13, 2015, which was twelve days before the FCE.

### Findings of Fact and Conclusions of Law

#### *General Legal Principles*

Mr. Poellnitz has the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, he need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability benefits and/or medical benefits. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard does not relieve Mr. Poellnitz of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, "but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

#### *Medical Benefits*

In the present matter, the Court will first address whether Resolute received timely notice of the referral by Dr. Smalley, the panel-selected physician, for Mr.

6

Poellnitz to see a cervical spine specialist. Dr. Smalley made the referral on September 9, 2015. (Ex. 10.) Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) (2015) requires that when a panel physician makes such a referral, "the treating physician shall . . . immediately notify the employer." It goes on to state, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups." Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii) (2015). If the employer provides a panel pursuant to this section, "the employee may choose a specialist . . . to provide treatment only from the panel provided by the employer." *Id.* In all cases where the treating physician has referred the employee to a specialist, "the specialist . . . to which the employee has been referred, or selected by the employee from a panel provided by the employer, shall become the treating physician until treatment by the specialist . . . concludes and the employee has been referred back to the treating physician selected . . . from the initial panel." Tenn. Code Ann. § 50-6-204(a)(3)(E) (2015).

Neither Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) (2015) nor the Tennessee Compilation Rules and Regulations sets forth a particular method of notification that the treating physician must follow in order to comply with the notice requirement for a referral. In the September 9, 2015 office note, Dr. Smalley consolidated Mr. Poellnitz's unrelated left-shoulder condition and work-related left-knee injury. (Ex. 10.) However, Dr. Smalley documented his referral for Mr. Poellnitz to a cervical spine specialist with his left-shoulder examination and not in conjunction with Mr. Poellnitz's left-knee injury. Although Resolute may have received notice of the referral by receipt of the September 9, 2015 office note, the Court finds that Dr. Hodges did not "become the treating physician" under Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) (2015) since the referral appeared to be related to Mr. Poellnitz's non-work-related left-shoulder condition.

The Court also finds that Dr. Strait is not entitled to a statutory presumption of correctness regarding causation under Tennessee Code Annotated section 50-6-102(14)(E) (2015). As Dr. Strait's December 7, 2015 office note indicates, he saw Mr. Poellnitz for a one-time "Independent Medical Evaluation." (Ex. 7.) The Court is unaware of any statutory law or case law indicating that a physician selected from a panel to perform an IME is entitled to the statutory presumption of correctness.

Since the Court finds that neither Dr. Hodges nor Dr. Strait is entitled to the statutory presumption of correctness regarding causation, the Court next considers whether Mr. Poellnitz satisfied the necessary requirements to qualify for medical benefits. The Workers' Compensation Appeals Board provided direction regarding the requirements an employee with pre-existing conditions must satisfy in order to qualify for medical benefits at an interlocutory hearing:

In sum, to qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). (T.R. 6 at Ex. 2.)

With those findings in mind, the Court considered the opinions of Dr. Hodges and Dr. Strait in deciding whether Mr. Poellnitz is likely to prevail at a hearing on the merits regarding his cervical condition. After evaluating Mr. Poellnitz, Dr. Strait initially opined that, "the onset of this nerve root compression syndrome originated from the events during the performance of the F.C.E." (Ex. 13.) Less than two weeks later, Dr. Strait changed his medical opinion in response to a letter from Travelers. (Ex. 16.) Dr. Strait opined, "the medical records clearly indicate that his left arm pain was not the result of him participating in the F.C.E., which occurred on August 25, 2015." *Id.* Travelers did not proffer into evidence any documentation sent to Dr. Strait by for consideration, so it is unclear as to which records he relied upon in rescinding his prior opinion.

Conversely, in Dr. Hodges' stated in an affidavit, he had reviewed Mr. Poellnitz's FCE, Dr. Strait's IME, and the records of Dr. Smalley, Dr. Ashley, and Dr. Thompson. (Ex. 8.) Additionally, Dr. Hodges treated Mr. Poellnitz on numerous occasions and performed his cervical surgery. He opined:

> [T]hat the cervical injuries and the aggravation of any pre-existing cervical conditions, which Mr. Poellnitz suffered while lifting at a work-related functional capacity evaluation on August 25, 2015, contributed to more than fifty percent (50%) in causing Mr. Poellnitz's disablement and the need for his surgery on October 14, 2015 at Memorial Hospital and the need for his follow up outpatient care in my offices, for the injuries, medical conditions and complications, as described in the Memorial records and in my office notes.

*Id.*

8

After considering the opinions of Dr. Strait and Dr. Hodges, the Court gives the greater weight to the opinion of Dr. Strait and finds that Mr. Poellnitz offered insufficient evidence to establish "that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015). The Court also finds he is not likely to establish "that the work accident contributed more than fifty percent in causing the aggravation, considering all causes." *See* Tenn. Code Ann. § 50-6-102(14)(B)-(C) (2015). Specifically, the Court finds it troubling that on August 13, 2015, Mr. Poellnitz reported to Dr. Thompson, his chiropractor, that he sustained an injury on "*July 22, 2015* when his left shoulder blade, *neck*, left hand and little finger and ring finger began hurting and became weak *after performing FCE at work*, also his right hip, left hip and [sic] became aggravated." Although Mr. Poellnitz saw Dr. Thompson on August 13, 2015, he did not undergo the FCE for his work-related knee injury until August 25, 2015. The record is silent as to why Mr. Poellnitz reported sustaining a neck injury during a FCE twelve days before it actually occurred. In light of this circumstance, the Court denies Mr. Poellnitz's request for medical benefits related to his cervical condition, and the issue regarding temporary disability benefits is rendered moot.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Poellnitz's request for medical and temporary disability benefits relating to his cervical condition is denied.

2. This matter is set for an Initial Hearing on September 1, 2016, at 10:00 a.m., ET.

**ENTERED this the 8th day of July, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

9

Status Hearing:

A Status Hearing has been set on September 1, 2016, at 10:00 a.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>

1. Employer's First Report of Work Injury or Illness
2. Notice of Denial of Claim for Compensation
3. Wage Statement
4. Job description
5. Panel form selecting Dr. Elizabeth Daubner
6. Panel form selecting Dr. Chad Smalley
7. Panel form selecting Dr. Timothy Strait
8. Affidavit of Scott D. Hodges, D.O.
9. Medical records of Dr. Elizabeth Daubner
10. Medical records of Dr. Chad Smalley
11. Operative records of Dr. Scott Hodges
12. Records of ATI Physical Therapy
13. January 4, 2016 office note of Dr. Timothy A. Strait
14. Medical records of Dr. Timothy Ashley
15. Chiropractic records of Dr. Bruce D. Thompson
16. Correspondence from Dr. Strait to Travelers dated January 19, 2016

<u>Technical record:</u>

1. Petition for Benefit Determination
2. Brief Supporting Petition for Benefit Determination
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Resolute Forest's position statement and amendment
6. Docketing Notice for Review of the File Determination

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of July, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| G. Brent Burks, Attorney | | | X | brentburks@mcmahanlawfirm.com<br>tim@mcmahanlawfirm.com |
| Bridget J. Willhite, Attorney | | | X | bridget@harrodlawfirm.com<br>melissa@harrodlawfirm.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**